EMERY DALE SHUMAKER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; MARK ALLAN SHUMAKER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Shumaker v. Commissioner
Docket Nos. 2362-83, 2395-83.
United States Tax Court
T.C. Memo 1985-582; 1985 Tax Ct. Memo LEXIS 44; 51 T.C.M. (CCH) 1; T.C.M. (RIA) 85582; December 2, 1985. Emery Dale Shumaker and Mark Allan Shumaker, pro se. Reid M. Huey, for the respondent. JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION JACOBS, Judge: In these consolidated cases, respondent determined the following deficiencies and additions to tax: Taxable
Additions to Tax
Petitioner
Year
Deficiency
§ 6651(a)(1) [1]
§ 6653(a)
§ 6654
Emery Dale
1974
$1,619.00
$422.75
$84.55
$53.97
Shumaker
1975
4,262.00
1,065.50
213.10
184.52
1976
7,642.00
1,910.50
382.10
284.61
1977
10,880.00
2,720.00
544.00
387.15
1978
6,467.00
1,616.75
323.35
206.43
1979
8,680.00
2,170.00
434.00
362.86
Mark Allen
1974
1,609.00
402.25
80.45
51.39
Shumaker
1975
3,706.00
926.50
185.30
160.01
1976
5,229.00
1,307.25
261.45
194.78
1977
14,131.00
3,532.75
706.55
502.81
1978
25,497.00
6,374.25
1,275.85
813.93
1979
5,745.00
1,436.25
287.25
240.13
*47 The issues for decision are: (1) whether Emery Dale Shumaker and Mark Allen Shumaker were each a 50 percent partner in a hog farming operation; (2) whether Emery Dale Shumaker had unreported taxable income during the years in issue in the amounts determined by respondent; and if so, whether he is liable for additions to tax under sections 6651(a), 6653(a) and 6654; and (3) whether Mark Allen Shumaker had unreported taxable income during the years in issue in the amounts determined by respondent; and if so, whether he is liable for additions to tax under sections 6651(a), 6653(a) and 6654. FINDINGS OF FACT Petitioner Emergy Dale Shumaker (Emery) is the father of Mark Allen Shumaker (Mark). Each resided in Osceola, Indiana, when he filed his petition. Neither Emergy nor Mark filed Federal income tax returns for 1974 through 1979, inclusive (the years in issue). Since neither Emery nor Mark maintained books or records from which their respective tax liabilities could be *48 computed, respondent reconstructed their respective incomes and determined their respective deductible expenses for the years in issue by scrutinizing bank and employment records, financial statements and bankruptcy petitions [2] filed by Emergy and Mark. Petitioners acknowledge receipt of income during each of the years in issue but contend that the amount of income received is substantially less than, and the amount of their deductible expenses is substantially more than, that as determined by respondent. For the years 1974 through 1977, respondent determined that Emery and Mark were equal partners in a hog farm operation, known as Lake View Farms, and that the income and expenses of such operation were as follows: [3]
1974
1975
1976
1977
Gross receipts
$51,270
$91,073
$64,700
$70,544
Total expenses
36,114
61,035
29,530
42,651
Profit
$15,156
$30,038
$35,170
$27,893
*49 Emery contends that Lake View Farms' profits were those of either his deceased wife, Christine [4], or of the Life Science Church, an entity established and controlled by Christine. However, petitioners represented in financial statements and in statements filed in connection with their respective bankruptcy proceedings that they were equal partners in Lake View Farms. Further, Emery, acknowledged that he, Mark, and their respective spouses [5] were signatories on an account at Central National Bank from 1974 through January 18, 1978, into which the receipts of Lake View Farms were deposited, and he stated that that account was used to pay their daily living expenses. Respondent determined that Emery received income (aside from his share of the profits from Lake View Farms) from (1) truck hauling services during 1977, 1978 and 1979, (2) rental of property to Mark during 1978 and 1979, [6] (3) wheat disaster payments from the United States Department of Agriculture in 1978, (4) Life Science Church in 1978, and (5) miscellaneous sources; and he reconstructed Emery's gross and self-employment income for the years in *50 issue as follows: Lake
Life
Self-
View
Wheat
Science
Gross
Employ.
Year
Farms
Hauling
Rent
Disaster
Church
Misc.
Income
Income
1974
$7,578
$7,578
$7,578
1975
15,019
15,019
15,019
1976
17,585
[7] $5,508
23,093
23,093
1977
13,946
$15,500
29,446
29,446
1978
12,758
$1,350
$3,499
$2,500
20,107
18,757
1979
23,498
1,350
24,848
23,498
Respondent calculated Emery's income tax *51 liability, using rates for a married individual filing separately, and calculated his self-employment tax liability as follows: Year
Income Tax
Self-Employment Tax
Total
1974
$1,092
$599
$1,691
1975
3,148
1,114
4,262
1976
6,433
1,209
7,642
1977
9,576
1,304
10,880
1978
5,033
1,434
6,467
1979
6,825
1,855
8,680
Respondent determined that Mark received income (aside from his share of the profits from Lake View Farms) from (1) truck hauling services during 1977, 1978 and 1979 [8], (2) Life Science Church in 1978, and (3) miscellaneous sources in 1977 and 1979; he reconstructed Mark's gross and self-employment income for the years in issue as follows: Lake
Life
Self
View
Truck
Science
Gross
Employ.
Year
Farms
Hauling
Church
Misc.
Income
Income
1974
$7,578
$7,578
$7,578
1975
15,019
15,019
15,019
1976
17,585
17,585
17,585
1977
13,946
$19,878
$1,712
35,536
35,536
1978
55,767
$2,500
58,267
58,267
1979
12,402
$7,731
20,133
12,402
Respondent calculated *52 Mark's income tax liability, using rates for a married individual filing separately, [9] and calculated his self-employment tax liability as follows: Year
Income Tax
Self-Employment Tax
Total
1974
$1,010
$599
$1,609
1975
2,592
1,114
3,706
1976
4,020
1,209
5,229
1977
[10] 16,827
1,304
14,131
1978
24,063
1,434
25,497
1979
4,740
1,005
5,745
In addition, respondent determined each petitioner to be liable for additions to tax under sections 6651(a)(1), 6653(a), and 6654. OPINION Petitioners do not contest respondent's determination as to the amount of Lake View Farms' gross receipts. Rather, they contend that (1) Lake View Farms' profits were substantially less than that determined by respondent since its expenses were substantially greater than that determined by respondent, and (2) Lake View Farms' profits belonged either to Christine or to the Life Science Church. In addition, each petitioner takes issue with respondent's determination regarding his taxable *53 income from sources other than Lake View Farms. Respondent's determinations are presumed correct and the burden is on petitioners to prove them otherwise. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Despite petitioners' self-serving testimony to the contrary, an examination of the record convinces us that petitioners intended to, and in fact did, own and operate Lake View Farms together as a joint venture, and therefore as a partnership. [11] See Commissioner v. Culbertson,337 U.S. 733, (1949); Luna v. Commissioner,42 T.C. 1067, 1077-1078 (1964). *54 Petitioners represented in financial statements that the assets and liabilities of Lake View Farms were owned by them equally. [12] In addition, they represented in sworn statements (submitted in connection with their respective bankruptcy proceedings) that they were equal partners in Lake View Farms. Finally, Emery and Mark each had authority to write (and in fact wrote) checks on the Lake View Farm's checking account at Central National Bank without the express assent of the other. No evidence was introduced to corroborate petitioners' self-serving testimony that Christine or the Life Science Church shared in the profits of Lake View Farms. Nor was any evidence introduced to show that Lake View Farms was operated by Christine or the Life Science Church. Petitioners failed to satisfy their burden of proving that respondent erred in determining that Emery and Mark were partners in Lake View Farms. Having found Emery and Mark to be partners in Lake View Farms, we hold that each petitioner must take into account separately his distributive *55 share of the partnership's taxable income as required by section 702(a)(8). Generally, the distributive share is determined by the partnership agreement.Section 704(a). However, in the absence of a partnership agreement, the distributive shares are determined by the partners' interests in the partnership. Section 704(b)(1). As Emery and Mark each own 50 percent of Lake View Farm's assets and have treated 50 percent of Lake View Farm's liabilities as their own, each is deemed to have a 50 percent interest in the partnership. Their respective distributive share of Lake View Farm's taxable income is accordingly 50 percent.Section 702(a)(8). We next must determine the correctness of respondent's determination of Lake View Farms' taxable income. It is petitioners' contention that respondent understated the expenses of Lake View Farms rather than that gross receipts were overstated. All ordinary and necessary expenses paid or incurred in carrying on a trade or business are allowed as deductions under *56 section 162(a). However, as petitioners are obligated by statute to maintain contemporaneous books and records to substantiate these expenses (section 6001), it is their burden to prove respondent's error. Welch v. Helvering,supra.
Respondent reconstructed Lake View Farms' operating expenses and calculated the allowable depreciation with respect to its depreciable assets. Petitioners did not supply the Court with sufficient evidence to refute respondent's calculations; no books, records, receipts, or cancelled checks were introduced to counter respondent's assertion. Instead, Emery introduced schedules which he prepared for this proceeding which listed expenses for each year from 1974 through 1977, and which showed a net operating loss for each year. These lists were described by Emery as estimates. Estimates in lists compiled for trial do not suffice as adequate contemporaneous substantiation of the alleged expenses. Accordingly, the deductions for expenses claimed by petitioners in excess of those already allowed by respondent must be denied. [13] We therefore *57 sustain respondent's determination as to the amount of Lake View Farms' taxable income for 1974 through 1977.
Respondent's additional determinations concern income received by each petitioner individually from sources other than Lake View Farms. He determined that Emery had truck hauling income of $15,500 in 1977, of $12,758 in 1978, and of $23,498 in 1979. Emery failed to take issue or produce any evidence to contradict respondent's determination as to the amount of his truck hauling income for 1977, and he conceded the correctness of resondent's determination as to the amount of his truck hauling income for 1978 and 1979. Thus, we sustain respondent's determination with respect to the amount of Emery's truck hauling income for 1977, 1978 and 1979. Respondent further determined that Emery received two checks as recompense for wheat disaster loss totalling $3,499, and miscellaneous income during 1976 of $3,617. [14] Having produced no evidence to rebut these determinations, Emery must suffer the consequences of failing to meet his burden of proof. We therefore sustain respondent's determination that *58 Emery received these sums as income. Emery and Mark received a $5,000 check from the Life Science Church during 1978, of which respondent attributed $2,500 as income to each. We believe that the source of the $5,000 received by Emery and Mark from the Life Science Church is the hog farming operations. Since we have concluded that all the profits of Lake View Farms are taxable to Mark and Emery, receipt of such $5,000 from the Life Science Church does not constitute taxable income to them. We also disagree with respondent's determination that Emery received rental income of $1,350 in each of the years 1978 and 1979 with regard to the Jefferson Road property. This sum reflects 50 percent of the $225 monthly rent allegedly paid by Mark for two entire years (respondent attributed the other 50 percent to Christine). However, the Jefferson Road property was not acquired by Emery and Christine until July 24, 1978; and on August 23, 1978, the property was deeded to the Life Science Church. Mark testified that he paid rent in 1978 to either Christine or to the Life Science Church according to a rent schedule. He further testified that due to his poor *59 financial condition, he paid rent in 1979 only occasionally. Emery testified that the Jefferson Road property did not belong to him. Finding their testimony on this matter credible, we hold that Emery did not receive rental income with respect to the Jefferson Road property in 1978 or 1979. Respondent determined that Mark had truck hauling income of $19,878 in 1977, $55,767 in 1978 and $12,402 in 1979. Mark conceded that he received substantially all the truck hauling income as determined by respondent. However, he alleged that he is entitled to deductions for fuel, depreciation, repairs, interest, labor, and insurance that respondent did not allow. As a general rule, a taxpayer must provide adequate substantiation of expenses for which he claims a deduction under section 162(a). Section 6001. However, where the circumstances establish sufficient grounds to approximate an expense, such approximation may be in order. Cohan v. Commissioner,39 F.2d 540, 543-544 (2d Cir. 1930). Based on Mark's testimony, as corroborated by independent testimony, we approximate Mark's *60 fuel expense for 1978 to be at least $13,160. However, none of his other unsubstantiated expenses merit such approximation. To do so would simply be "unguided largesse." Williams v. United States,245 F.2d 559 (5th Cir. 1957). We cannot estimate the fuel consumed for 1977 or 1979 as the record is silent as to the amount of mileage driven by Mark during such periods. We cannot calculate an annual depreciation as we have no proof of Mark's depreciable basis in the tractor or trailer other than his unsupported testimony. We also have no grounds, other than Mark's testimony, that he spent sums for repairs of his engine and tires on which to base an approximation of an expense incurred for these purposes. An interest deduction cannot be allowed since we are not told the interest rate to which Mark was subject, nor the amount of principal outstanding on any loan. Neither was there any credible corroborating testimony establishing the amounts paid to hire labor to assist Mark in driving the truck. Finally, nothing was said at trial about insurance. In general, Mark's presentation with respect to overcoming his burden of proof with regard to deductions other than that *61 allowed by respondent and that for fuel in 1978 was totally inadequate. Therefore, the only additional deduction to which Mark is entitled (other than those allowed by respondent) with respect to this matter is a fuel expense for 1978 of $13,160. Respondent discovered other unreported income which Mark earned during the years 1977 through 1979. In 1977, Mark received $1,311.18 and $401.00 for performing farm work on two farms with Lake View Farms' combine equipment. Mark admits receiving the $401.00 but contends that the $1,311.18 was received as an agent of Lake View Farms. However, the check for $1,311.18 was made out to Mark personally, and he presented no evidence to prove that he turned the check over to the Lake View Farms. As discussed, supra, respondent erred in attributing to Mark $2,500 of the $5,000 Life Science Church check. Finally, respondent determined that during 1979 Mark performed services for which he received $7,731. Mark introduced no evidence refuting respondent's determination that the amount received for such services is taxable. Accordingly, respondent's determination in this regard is sustained. Respondent also determined that each petitioner *62 is liable for additions to tax under sections 6651(a)(1), 6653(a), and 6654. Under section 6651(a)(1), respondent may impose a prescribed addition to tax if petitioners failed to timely file a return "unless it is shown that such failure is due to reasonable cause and not due to willful neglect." Emery alleged that Christine timely filed their returns, but produced nothing to bolster his assertion. Mark admitted to not filing returns for the years in issue. Neither petitioner sustained his burden of proving that his failure to file returns for 1974 through 1979 was due to reasonable cause or was not due to willful neglect. Accordingly, we sustain respondent's imposition of the addition to tax under section 6651(a)(1). We also sustain respondent's imposition of the addition to tax under section 6653(a) upon both Emery and Mark for each of the years in issue. Section 6653(a) provides that there shall be added to one's tax a percentage of the underpayment "if any part of any underpayment * * * *63 of any tax imposed * * * is due to negligence or intentional disregard of rules or regulations * * *." The burden is on each petitioner to prove either that there was no underpayment or if there was an underpayment that no part of such underpayment was due to negligence or intentional disregard of the rules or regulations. Since we have found that each petitioner owed tax for each year in issue, each has an underpayment of tax for each year. Section 6653(c)(1). Neither petitioner has proven that his underpayment was not due to negligence or intentional disregard of the rules or regulations for any year. Therefore, we hold the addition to tax under section 6653(a), as determined by respondent, to be appropriate for each year in issue. The addition to tax imposed by respondent under section 6654 on each petitioner is also warranted. Section 6654(d) imposes a requirement that estimated taxes be paid in installments. If a taxpayer fails to pay a sufficient amount of estimated taxes, section 6654(a) provides for an automatic addition to tax, calculated by a prescribed formula. Petitioners *64 failed to pay estimated taxes or have any taxes withheld. Therefore, we sustain respondent's determination with respect to the addition to tax under section 6654. To reflect the foregoing, Decisions will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, and in effect during the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Both Emery and Mark filed voluntary petitions in bankruptcy in the United States Bankruptcy Court for the Northern District of Indiana. Emery's petition was filed on September 13, 1978; Mark's petition was filed on August 29, 1979.↩
3. Respondent's determination was based on financial statements submitted by Emery and Mark to the Central National Bank, Greencastle, Indiana, in 1975 and 1976, and written answers set forth in Emery's and Mark's bankruptcy petitions.↩
4. Christine died in 1981. ↩
5. Mark married Debara in 1975.↩
6. Mark testified that he paid $225 a month rent during 1978 (and occasionally during 1979) for the property located at 10629 Jefferson Road, Osceola, Indiana (the Jefferson Road property) to the Life Science Church and to Christine. The Jefferson Road property was acquired by Emery and Christine on July 24, 1978, and on August 23, 1978, they deeded the property to the Life Science Church. Respondent determined that one-half of the rent was taxable to Emery. ↩
7. At trial respondent conceded a $1,891 error with respect to the amount of miscellaneous income for 1976. Thus, the amount of miscellaneous income determined by respondent, as revised, for 1976 is $3,617.↩
8. Mark performed truck hauling services as an owner-operator of a tractor trailer.↩
9. Mark married Debara in 1975; he record does not indicate whether Mark was married in 1974. ↩
10. It would appear that this amount should be $12,827 rather than $16,827.↩
11. A partnership is "a syndicate, group, pool, joint venture or other unincorporated organization, through, or by means of which any business, financial organization, or venture is carried on, and which is not, within the meaning of this title, a trust or estate or a corporation * * *." Sec. 7701(a)(2); see also sec. 761(a). That Lake View Farms was a business is uncontested. "The legal relationship known as a joint venture has been defined as a 'special combination of two or more persons, where in some specific venture a profit is jointly sought without equitable partnership or corporate designation' and also as 'an association of persons to carry out a single business enterprise for profit.'" [Citations omitted.] Beck Chemical Equipment Corp. v. Commissioner,27 T.C. 840, 848-849↩ (1957).
12. Lake View Farms was operated on property owned by Christine and her brother, Elmer Milhon. Rent was paid for the use of such property.↩
13. See Babcock v. Commissioner,T.C. Memo 1979-372↩.
14. See note 7, supra.↩